# In the United States Court of Federal Claims

No. 15-1541C
(Filed under seal December 2, 2016)
(Reissued December 13, 2016)†

* * * * * * * * * * * * * * * * * *

**TELOS CORPORATION,**

Plaintiff,

v.

**THE UNITED STATES,**

Defendant,

and,

**NETCENTRICS CORPORATION,**

Defendant-Intervenor.

* * * * * * * * * * * * * * * * * *

RCFC 62(c) motion for injunction pending appeal; unsuccessful bid protest; APA review standard; Federal Supply Schedule, FAR subpart 8.4; streamlined process; no substantial case on the merits.

*Nathanael D. Hartland*, Miles & Stockbridge P.C., with whom were *Joseph G. Billings*, *Katherine B. Burrows*, *Michael E. Samuels*, and *Jeremy S. Scholtes*, all of Baltimore, Maryland, for plaintiff.

*Corinne A. Niosi*, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Douglas K. Mickle*, Assistant Director, all of Washington, D.C., for defendant. *Major M. Aaron Lee*, U.S. Army Legal Services Agency, Contract and Fiscal Law Division, Fort Belvoir,

† The parties joined in a request to redact information from this order. As requested, the identity of a specific feature proposed by intervenor, and specific financial information of plaintiff, are redacted. More general statements from a proposal or evaluation will not be redacted, nor will a description of the experience of an unnamed individual, as these are not competition-sensitive.

Virginia, and *Scott A. Johnson*, Army Materiel Command Legal Center, Rock Island Arsenal, Illinois, of counsel.

*Jeremy W. Dutra*, Squire Patton Boggs (US) LLP, with whom were *Karen R. Harbaugh* and *John R. Sharp*, all of Washington, D.C., for defendant-intervenor.

**ORDER**

A short time after the Court announced an oral ruling concerning plaintiff Telos Corporation's bid protest, and issued an order denying Telos's motion for judgment and request for injunctive relief, Telos filed a motion under Rule 62(c) of the Rules of the United States Court of Federal Claims (RCFC). Telos sought an injunction pending the appeal of the order denying the earlier-requested injunction. The injunction pending appeal was not granted. The reasons set forth below explain why the RCFC 62(c) motion is denied.

Under RCFC 62(c), "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." RCFC 62(c). This type of injunction has been characterized as "an extraordinary and drastic remedy," *Akima Intra-Data, LLC v. United States*, 120 Fed. Cl. 25, 27 (2015), which accordingly "will not be lightly granted," *RLB Contracting, Inc. v. United States*, 120 Fed. Cl. 681, 682 (2015) (citation omitted). Indeed, the Court is not aware of a single instance in which an RCFC 62(c) injunction has been issued.

The moving party carries the burden of establishing the propriety of an injunction pending appeal, which is based on the consideration of four factors:

> (1) whether the movant has made a strong showing that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent an injunction; (3) whether issuance of the injunction will substantially injure the other interested parties; and (4) where the public interest lies.

*Akima Intra-Data*, 120 Fed. Cl. at 27–28 (citing *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990)); *see also RLB Contracting,* 120 Fed. Cl. at 682. Following the Federal Circuit's approach to stays pending appeal, opinions from our court have recognized a flexible application of these factors. Thus, an injunction is possible even when success on the merits is not probable, but this requires a "substantial case on the merits," *Akima Intra-Data*, 120 Fed. Cl. at 28 (quoting *Standard Havens Prods.,* 897 F.2d at 513), and "the other factors must tilt 'decidedly toward plaintiff,'" *RLB Contracting*, 120 Fed. Cl. at 682 (citing same).

Concerning the first injunctive relief factor, plaintiff argued that there is a strong likelihood that the Federal Circuit will rule in its favor or that, at a minimum, it has a substantial case on the merits of its appeal. Pl.'s Mot. for Inj. Pending Appeal (Pl.'s Mot.) at 1. In support, Telos raised four grounds. *Id.* As should be expected, the Court does not find it likely that the Federal Circuit will rule in plaintiff's favor on any of these grounds, for plaintiff would have prevailed here were that the case.[1] Nor is the Court persuaded that Telos has a substantial case on these grounds for appeal, even were the other factors to tilt decidedly in its favor --- and they do not.

First, plaintiff contended that the Court did not properly apply the Administrative Procedure Act's (APA) "coherent and reasonable explanation" standard. *Id.* at 6 (citing *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009) & 5 U.S.C. § 706). Specifically, Telos contended (incorrectly) that the agency has the burden to demonstrate by a preponderance of the evidence that a rational basis for its decision exists,[2] and that here the agency failed to explain why it did not find certain aspects of Telos's proposal to be significant strengths.[3] *Id.* at 4–6. Telos argued that the Court impermissibly allowed the

---

[1] The Court supposes that one circumstance in which a trial judge would rule contrary to the likely outcome from a court of appeal would be the rare occasion in which an *en banc* decision was anticipated to overrule an obviously flawed (yet still binding) panel opinion.

[2] Telos got this incorrect notion of a burden falling on the government from dicta in the standard of review portion of an opinion by the undersigned. *See* Pl.'s Mot. at 6 (quoting *Tech Sys., Inc. v. United States*, 98 Fed. Cl. 228, 244 (2011)). This dicta originated in an opinion that had been issued in July, 2004, *see Gulf Group Inc. v. United States*, 61 Fed. Cl. 338, 351 (2004), and reflected the application of summary judgment principles in administrative record proceedings. More than nine months later, the Federal Circuit definitively concluded that summary judgment principles do not apply in these proceedings, *see Bannum, Inc. v. United States*, 404 F.3d 1346, 1354–57 (Fed. Cir. 2005), and thus only plaintiffs bear a burden of proof in bid protests. The Court appreciates the opportunity to clarify this matter, and regrets that any parties may have been led astray by this outdated and erroneous dicta.

[3] In the complaint, Telos alleged that it did not receive "numerous 'Significant Strengths' and 'Strengths'" that it deserved under both the Technical and Management evaluation factors. Compl. ¶¶ 211–349. Likewise, in its motion for judgment on the administrative record, Telos argued that the agency's evaluation was "unreasonable because it failed to recognize numerous significant strengths (or, in the alternative, strengths)," citing seventy-six aspects of its proposal that it contends the agency should have found to be significant strengths under the Technical and Management factors. Pl.'s Mot. J. Admin. R. at 23–33.

streamlined approach to acquisitions under the Federal Supply Schedule (FSS) program, subpart 8.4 of the Federal Acquisition Regulation (FAR) --- and, in particular, the limited amount of required documentation, 48 C.F.R. § 8.405-2(f) --- to lower the review standard below what the APA requires. Pl.'s Mot. at 4–10. Plaintiff contended that the Court's approach is "inconsistent with" *Citizens to Preserve Overton Park, Inc. v. Volpe (Overton Park)*, 401 U.S. 402, 420 (1971), which recognized that a court may require challenged decisions to be further explained, and *Axiom Resource Management, Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009), which noted that a contemporaneous record could be supplemented with additional evidence, Pl.'s Mot. at 5.

In this argument, Telos has things backwards. In a post-award bid protest, the agency decision being reviewed under the APA standard is the award decision. *See* 28 U.S.C. § 1491(b)(1), (4). When an agency selects one offer among many, that exercise of discretion is scrutinized to ensure that the agency "considered the relevant factors and articulated a rational connection between the facts found and the choice made." *Balt. Gas & Elec. Co. v. Natural Res. Def. Council*, 462 U.S. 87, 105 (1983) (citation omitted); *see Beta Analytics Int'l, Inc. v. United States*, 67 Fed. Cl. 384, 396 (2005). The selection decision explained why intervenor's quote was found superior to plaintiff's quote, Admin. R. (AR) at 1226–27, and relied upon evaluation reports that explained the findings of strengths and significant strengths, *see* AR at 1010–12, 1056–57. These and the other evaluation documents are subject to review to verify "that objective elements contained in the agency's analysis, such as the description of the offeror's narrative, correspond to the evidence in the record" and "to see if subjective judgments are reached elsewhere in the analysis that contradict the evaluators' conclusions," *USfalcon, Inc. v. United States*, 92 Fed. Cl. 436, 462 (2010) (citations omitted). In this case, the selection decision was found to be rational, and not undermined by any objective errors or subjective inconsistencies.

A statute or regulation could impose specific factors that an agency must consider in making a decision, or specific duties associated with the decision, which will affect the review process. The Supreme Court considered one such situation in *Overton Park*, where the Secretary of Transportation was required to make certain findings, *see* 401 U.S. at 404, 408, and the responsibility determinations required by the FAR are another, *see Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1339 (Fed. Cir. 2001). To these considerations, of course, are added the evaluation factors and criteria announced by an agency. *See*, *e.g.*, 48 C.F.R. §§ 8.405-2(d), 15.304(d). For negotiated procurements, the FAR requires a certain level of documented analysis of "relative strengths, deficiencies, significant weaknesses, and risks," 48 C.F.R. § 15.305(a), including technical assessments and summaries, *id.* § 15.305(a)(3), which may be mined by protesters for prejudicial errors or inconsistencies. Far less is required in FSS purchases. *See* 48 C.F.R. § 8.405-3(d), (f). Telos's position is that a protester can unilaterally impose upon an agency the duty to explain why any feature in its proposal was not found to be a

strength, merely by disputing this determination. Such a concept is unprecedented, because it would shift the focus of bid protests far from the review of the actual procurement decision and, hence, depart from the APA review standard.

This is not to say that the failure to assign a strength may not be challenged as inconsistent with the treatment of an identical aspect of a competitor's proposal, or that approaches found adequate in a winning offeror's proposal may not be challenged as objectively deficient or inconsistently evaluated. But the notion that when an agency finds aspects of a protester's proposal to be adequate, and thus not material to the best value determination, each adequacy determination must nevertheless be explained for the award decision to be rational, has no basis in law or reason. Such an approach is not even required in non-FSS, negotiated procurements. *See InSpace 21 LLC v. United States*, 128 Fed. Cl. 69, 89 (2016). In sum, the decision that must be reasonably articulated and supported in a post-award bid protest is the selection of the awardee, not every "decision" that a proposed feature is unremarkable, and plaintiff has failed to make a substantial case for the latter proposition.

Telos's second merits-related argument concerned allegations of unequal treatment. Pl.'s Mot. at 10–12. The Court finds the three examples provided by plaintiff to be no more persuasive the second time around. Plaintiff first contended that intervenor NetCentrics Corp. received a significant strength under the Technical factor based on its experience, while the agency did not assign any significant strengths to Telos based on its incumbent experience. *Id.* at 10–11. This argument mainly rests on a mischaracterization of the significant strength given to the intervenor,[4] and in any event the record shows no inconsistency in the agency's evaluations. The Technical and Management evaluations were not based strictly on an offeror's experience --- what it had done --- but did reflect experience, when relevant to an offeror's understanding of requirements and demonstrated approach to meeting them. Telos similarly received a strength based on the proposed application of its experience. AR at 1057 (task 1, subtask 6). Next, Telos argued that its incumbency should have merited it a higher rating for transition than NetCentrics received. Pl.'s Mot. at 11. But Telos admitted in its proposal that "[e]ven when an incumbent contractor is awarded the task there are risks associated with every transition," AR at 943, and one element of the Transition Plan

[4] The significant strength in question was not given because a proposed subject matter expert of NetCentrics had experience he could use to bring other employees "up to speed." *See* AR at 1010–11. That language was merely part of a larger quotation from intervenor's proposal, explaining its proposed use of "[XXXX]" ([XXXX]). *Id.* The significant strength was based on intervenor's "excellent understanding of the criticality to monitoring performance with [XXXX]" and the resulting demonstration that it "can significantly reduce risk in [XXXX] and [XXXX] for the Government, conveying to the Government an appreciably increased probability of successful contract performance." *Id.* at 1011.

subfactor was the "Transition-Out Plan" at the new contract's end, AR at 552–53. Thus, it is not inherently unreasonable for an incumbent's transition plan to be found no more than adequate. Plaintiff's final example, Pl.'s Mot. at 12, amounts to the quibble that the assessment of the intervenor's quality control plan used the words "consistent performance metrics" in place of the phrase "performance standards and metrics that align with" requirements, from the first criterion for that subfactor, *see* AR at 1014, 1016. In any event, NetCentrics received the identical treatment as plaintiff under this subfactor, as it, too, had a strength downgraded to a finding of adequacy regarding the plan's "alignment." *See* AR at 1120, 1127. These examples do not make a substantial case for a finding of unequal treatment.

Plaintiff's third merits-related argument concerned whether the experience described for the intervenor's proposed Automated Message Handling System (AMHS) subject matter expert was sufficient to satisfy the qualifications for the position. Telos maintained that an individual cannot have "direct experience with enterprise clustered AMHS" and "prove technical ability in the architecture, deployment, and sustainment of" certain AMHS platforms, without being personally responsible for the architecture and deployment of such a system. Pl.'s Mot. at 12–13 (quoting AR at 483). The agency felt otherwise, as the proposed expert detailed "8 years' experience with the Telos AMHS platform and supporting software/hardware" --- including having "[w]orked with Telos employees to design and implement the approach and deployment of the first AMHS system with EMC AutoStart" and "to understand the inner workings of the AMHS program." AR at 731. Plaintiff has not made a substantial case that the agency unreasonably found that such experience satisfied the required "direct experience" and "technical ability in the architecture, deployment and sustainment" of such AMHS platforms.

Plaintiff's final merits-based argument was that the agency did not adequately explain why it believed that NetCentrics proposed sufficient staffing to perform the contract requirements, given the agency's responsibility under FAR section 8.405-2(d) "for considering the level of effort and the mix of labor proposed to perform a specific task being ordered." *See* Pl.'s Mot. at 15–18. The record shows that the agency evaluators did consider these matters, however, as they specifically found that the intervenor "proposed adequate labor categories and labor mix to satisfy program requirements." AR at 1015. Telos, relying on a Government Accountability Office (GAO) opinion that was not cited in its briefs on the merits, *see* Tr. (Feb. 24, 2016) at 48, argued that the agency should have explained why the staffing was found adequate for each task to be performed under the contract, Pl.'s Mot. at 15–18 (citing *Advanced Tech. Sys., Inc.*, B-296493.6, 2006 CPD ¶ 151, 2006 U.S. Comp. Gen. LEXIS 164, at *18–22 (Oct. 6, 2006)). But the FAR does not require such a discussion, *see* 48 C.F.R. § 8.405-2(d), which would be inconsistent with the streamlined FSS process and contrary to the documentation requirement, *see id.* § 8.405-2(f). Moreover, the Court is not persuaded that the GAO opinion Telos relies upon --- which concerned a procurement in which labor effort was

proposed in the aggregate by Contract Line Item Number (CLIN) and an offeror which had inexplicably cut its proposed effort by more than half, *see Advanced Tech. Sys.*, 2006 U.S. Comp. Gen. LEXIS 164, at *16 & n.10, *21 --- has any relevance to this case. Here, although organized by CLIN, NetCentrics expressed its proposed staffing by specific task, *see* AR at 716–19, so when the evaluators were "considering the level of effort and the mix of labor proposed," this necessarily encompassed the specific tasks. Telos has failed to make a substantial case on this point.

Although the foregoing discussion demonstrates that Telos's motion cannot be granted, the Court will briefly address the other injunctive relief factors. Telos claimed that it would suffer irreparable injury in the form of lost profits, loss of proprietary information, an adverse impact on Telos and its employees, and "dire consequences" for its small business subcontractors. Pl.'s Mot. at 18–20. But these are the unavoidable results of its contract coming to an end. A bid protester who has lost its protest on the merits must show more than this to satisfy the irreparable harm factor, such as the prospect "that it will be put out of business." *Akima Intra-Data*, 120 Fed. Cl. at 28–29; *cf. Standard Havens Prods.*, 897 F.3d at 515 (finding appellant was "likely to suffer irreparable harm" such as "immediate insolvency, and, possibly, extinction"). For these purposes, a [less than ten] percent reduction in revenue is not enough.

The third factor concerns whether a requested injunction would substantially injure the other parties. As Telos's bridge contract was significantly more expensive than the contract awarded to NetCentrics, the government would have spent an additional $1.42 million per month for these services had an injunction issued. Def.'s Opp. to Pl.'s Mot. at 21 (citing Carrington Decl., App. at 2, ¶ 7). The intervenor would have suffered a further delay in performing and profiting from its contract, despite the award decision having been upheld by both the GAO and this court. Under these circumstances, the injuries to the defendant and the intervenor would be no less substantial than those claimed by Telos, and could not decidedly tip in favor of the plaintiff.

Plaintiff's argument that the public interest would be served by an injunction rested solely upon its claim that the contract was improperly awarded. Pl.'s Mot. at 25–26. But the contract award was found to be lawful, and thus the public interest would not be furthered by an injunction. *See RLB Contracting*, 120 Fed. Cl. at 683 n.2.

For the reasons stated above, plaintiff's motion for an injunction pending appeal is **DENIED**.

**IT IS SO ORDERED.**

s/ Victor J. Wolski
**VICTOR J. WOLSKI**
Judge